U.S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
RECEIVED

AUG 1 5 2016

TONY R. MOORE   CLERK
BY _____
            DEPUTY

UNITED STATES DISTRICT COURT                    b
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION

KYLE SMITH HAUENSTEIN           CIVIL ACTION NO. 1:14-CV-03188

VERSUS                          CHIEF JUDGE DRELL

RAPIDES PARISH SHERIFF'S        MAGISTRATE JUDGE PEREZ-MONTES
DEPT., et al.

## REPORT AND RECOMMENDATION

Before the Court is a civil rights complaint filed pursuant to 42 U.S.C. § 1983, *in forma pauperis*, by Plaintiff Kyle Smith Hauenstein ("Hauenstein") on November 3, 2014 (Doc. 1) and amended on January 29, 2015 (Doc. 8), and March 28, 2016 (Doc. 60). Hauenstein also alleges supplemental state law claims for negligence. The remaining defendants are Rapides Parish Sheriff William Hilton ("Hilton") and Pat Ashley ("Ashley") (Assistant Warden at the Rapides Parish Detention Center I), in both their individual and official capacities.[1]

Hauenstein contends that, while he was confined in RPDC I in March 2014, defendants delayed appropriate medical care for an infection on his right foot from March 14, 2014 to about April 11, 2014 (Doc. 32-1, pp. 41, 47/100; Doc. 32-3, p. 1/10), resulting in an emergency room visit in April 2014, three surgeries including amputation of his big toe, kidney failure, and dialysis treatments. Hauenstein seeks a jury trial, monetary damages, costs, and attorney fees.

---

[1] Since Plaintiff did not specify whether he is suing Defendants in their individual or official capacities, the Court presumes that he is suing them in both capacities.

Defendants answered the complaints (Docs. 13, 64), and filed a motion for summary judgment (Doc. 36).

Hauenstein did not file a response to Defendants' motion for summary judgment. Hauenstein was granted an extension of time (until April 1, 2016) to file a response to Defendants' motion for summary judgment (Doc. 47). Hauenstein then amended his complaint (Doc. 60), and Defendants were given through May 23, 2016 to supplement their motion for summary judgment (Doc. 59). Hauenstein asked for another extension of time to respond to the original motion for summary judgment, which was denied as moot (Doc. 63) because he would be given additional time in the Notice of Motion Setting when Defendants supplemented their motion for summary judgment. However, Defendants never supplemented their motion for summary judgment.

Hauenstein's Factual Allegations

Hauenstein alleges in his amended complaint (Doc. 60) that, in March and April 2014, he was a Louisiana Department of Corrections ("DOC") inmate housed in the Rapides Parish Detention Center I ("RPDC I") in Alexandria, Louisiana. On March 14, 2014, Hauenstein noticed a sore on his right foot, behind his big toe, that appeared to be infected. Hauenstein alleges he filled out a sick call form that day and a medic referred to as "Dr. Barry" examined his foot the next day.

Hauenstein explained he had stepped on something that was stuck in his foot. The medic tried unsuccessfully to dig out the foreign object and prescribed antibiotics for seven days. The sore grew and developed a hole in the center of it, and Hauenstein

began to run a fever.  After Hauenstein began to have difficulty walking on his right foot, he filled out a sick call form to see the medic again.  Hauenstein alleges he continued to fill out sick call forms every day, but he did never saw the medic again. Hauenstein contends his foot secreted green pus and smelled foul, he could not walk, and he was in extreme pain.

Hauenstein alleges the guards advised him to have his family call the warden's office and complain about the lack of medical care.  The area around the sore on Hauenstein's foot began to turn black and he could not sleep well.  About two weeks after he saw "Barry" on March 14, Hauenstein told his parents about his medical problem and his mother called the warden's office.  Assistant Warden Ashley visited Hauenstein about one hour later (Doc. 60; Doc. 36-4, p. 19/41).  Ashley immediately sent Hauenstein to the emergency room (Doc. 60; Doc. 36-4, p. 19/41).

At the hospital, a piece of metal was extracted from Hauenstein's foot and he was given IV antibiotics, but his kidneys shut down and he was placed on dialysis. The big toe on Hauenstein's right foot was later amputated.

Summary Judgment

Rule 56 of the Federal Rules of Civil Procedure mandates that the Court shall grant a summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Paragraph (e) of Rule 56 also provides the following:

> If a party fails to properly support an assertion of fact or fails to properly
> address another party's assertion of fact as required by Rule 56(c), the
> court may: (1) give an opportunity to properly support or address the
> fact; (2) consider the fact undisputed for purposes of the motion; (3) grant

summary judgment if the motion and supporting materials-including the facts considered undisputed-show that the movant is entitled to it; or (4) issue any other appropriate order.

Local Rule 56.2 also provides that all material facts set forth in a statement of undisputed facts submitted by the moving party will be deemed admitted for purposes of a motion for summary judgment unless the opposing party controverts those facts by filing a short and concise statement of material facts as to which that party contends there exists a genuine issue to be tried.

Substantive law determines what facts are "material."  A material fact issue exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  However, the mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient to preclude summary judgment; there must be evidence on which the jury could reasonably find for the plaintiff.  See Stewart v. Murphy, 174 F.3d 530, 533 (5th Cir. 1999).

If the movant produces evidence tending to show that there is no genuine issue of material fact, the nonmovant must then offer evidence sufficient to establish a genuine issue of material fact for trial.  In this analysis, the Court reviews the facts and draws all inferences most favorable to the nonmovant.  See Herrera v. Millsap, 862 F.2d 1157, 1159 (5th Cir. 1989).  However, mere conclusory allegations are not competent summary judgment evidence, and such allegations are insufficient to defeat a motion for summary judgment.  See Topalian v. Ehrman, 954 F.2d 1125, 1131 (5th Cir. 1992).

4

<u>Law and Analysis</u>

<u>Exhaustion</u>

Defendants contend Hauenstein's complaint should be dismissed for failure to exhaust his administrative remedies.

The exhaustion requirement imposed by amended § 1997e is not jurisdictional. <u>See</u> <u>Woodford v. Ngo</u>, 548 U.S. 81, 101 (2006).  However, the Fifth Circuit held in <u>Gonzalez v. Seal</u>, 702 F.3d 785, 788 (5th Cir. 2012), that exhaustion is mandatory and district courts have no discretion to excuse a prisoner's failure to properly exhaust the prison grievance process before filing their complaint.  Thus, a case must be dismissed if available administrative remedies were not exhausted.  <u>Id.</u>  However, the exhaustion requirement has been subject in rare instances to certain defenses such as waiver, estoppel, or equitable tolling.  <u>See</u> <u>Days v. Johnson</u>, 322 F.3d 863, 866 (5th Cir. 2003); <u>see also</u> <u>Huff v. Neal</u>, 555 Fed.Appx. 289, 294-295 (5th Cir. 2014).

Since exhaustion is an affirmative defense, the burden is on the defendants to demonstrate that Hauenstein failed to exhaust available administrative remedies. <u>Jones v. Bock</u>, 549 U.S. 199, 216 (2007).  Defendants must establish beyond doubt all of the essential elements of the defense of exhaustion to warrant summary judgment in their favor.  <u>See</u> <u>Dillon v. Rogers</u>, 596 F.3d 260, 266 (5th Cir. 2010) (citing <u>Martin v. Alamo Cmty. Coll. Dist.</u>, 353 F.3d 409, 412 (5th Cir. 2003)).

Whether a prisoner has exhausted administrative remedies is a mixed question of law and fact.  <u>See</u> <u>Dillon v. Rogers</u>, 596 F.3d 260, 266 (5th Cir. 2010) (citing <u>Carty v. Thaler</u>, 583 F.3d 244, 252 (5th Cir. 2009), cert. den., 559 U.S. 1106

(2010)).  While it is a question of law whether administrative remedies qualify as being "available" under 42 U.S.C. § 1997e(a), availability may sometimes turn on questions of fact.  See Dillon, 596 F.3d at 266 (citing Snider v. Melindez, 199 F.3d 108, 113–14 (2d Cir. 1999)).

Defendants contend the Inmate Handbook that was issued to Hauenstein clearly sets his right to administrative remedies, and argue that Hauenstein's failure to file a grievance due to the guard's threat was not reasonable.  However, Hauenstein stated in his deposition that he did not receive an Inmate Handbook when he was in RPDC I, and did not receive one until he was moved to RPDC III[2] sometime after he returned from the hospital (Doc. 36-4, p. 10/41).  Hauenstein testified that, at RPDCI, he had access to sick call forms and grievance forms, but "that Sargeant Suave" told him not to use the grievance forms or he would be placed in the "dungeon" (an area in the back of the prison) (Doc. 36-4, p. 10/41).  Hauenstein testified that other inmates also told him the same thing (Doc. 36-4, pp. 10-11/41).  Hauenstein testified that he believed this and, consequently, never filed a grievance (Doc. 36-4, p. 10/41).

Estoppel is an equitable doctrine invoked to avoid injustice in particular cases, and a hallmark of the doctrine is its flexible application.  Dillon, 596 F.3d at 270, (citing Heckler v. Cmty. Health Service of Crawford County, Inc., 467 U.S. 51, 59 (1984)).  The Fifth Circuit has held that estoppel provides a basis for excusing a prisoner's failure to exhaust administrative remedies.  Dillon, 596 F.3d at 270 (citing

---

[2] The RPDC has three facilities.  RPDC I is the oldest and is adjacent to the Rapides Parish Courthouse, while RPDC II and III are much newer and are several miles from RPDC I.  The events complained of herein took place in the RPDC I.

Days, 322 F.3d at 866 and Wendell v. Asher, 162 F.3d 887, 890 (5th Cir.1998),
overruled by implication on other grounds by Jones, 549 U.S. at 216, 127 S.Ct. 910).
A party claiming estoppel must, among other things, demonstrate that he "reasonably
relied on the conduct of the other to his substantial injury."  See Dillon, 596 F.3d at
270.

     In this case, Hauenstein alleges detrimental reliance, claiming the guard's
threat to place him in the "dungeon" area if he filed a grievance, a threat that was
confirmed by other inmates, prevented him from exhausting his administrative
remedies.  There is a genuine issue of material fact as to whether Hauenstein relied
to his detriment on representations made by a guard at RPDC I that effectively
prevented him from exhausting his administrative remedies prior to filing this action.
Moreover, Defendants have not submitted any grievance records from the RPDC or
an affidavit from the RPDC records-keeper to show that Hauenstein did not file any
grievances.

     There are genuine issues of material fact that preclude a summary judgment
on the issue of exhaustion.  Defendants' motion for summary judgment should be
denied on this issue.

## Denial of Medical Care

     The Constitution does not mandate comfortable prisons, but neither does it
permit inhumane ones, and it is settled that the treatment a prisoner receives in
prison and the conditions under which he is confined are subject to scrutiny under
the Eighth Amendment. See Farmer v. Brennan, 511 U.S. 825, 832 (1994). Although

the Eighth Amendment does not, by its precise words, mandate a certain level of medical care for prisoners, the Supreme Court has interpreted it as imposing a duty on prison officials to ensure that inmates receive *adequate* medical care. See Easter v. Powell, 467 F.3d 459, 463 (5th Cir. 2006) (citing Farmer, 511 U.S. at 832). The fact that the medical care given is not the best that money can buy does not amount to deliberate indifference. See Mayweather v. Foti, 958 F .2d 91 (5th Cir. 1992); Ruiz v. Estelle, 679 F.2d 1115, 1149 (5th Cir. 1982), amended in part and vacated in part on other grounds, 688 F.2d 266, 267 (5th Cir. 1982).

Under the Eighth Amendment, a lack of proper inmate medical care can be "cruel and unusual punishment" only if it is "sufficiently harmful to evidence deliberate indifference to serious medical needs." See Estelle v. Gamble, 429 U.S. 97, 106 (1976). First, the deprivation must be, objectively, sufficiently serious and the prison official's act or omission must result in the denial of the minimum civilized measure of life's necessities. Second, a prison official must have a sufficiently culpable state of mind–i.e. deliberate indifference to a prisoner's constitutional rights–to be subjected to § 1983 liability. See Farmer, 511 U.S. at 834. The Supreme Court defined "deliberate indifference" as "subjective recklessness", or, in other words, a conscious disregard of a substantial risk of serious harm. See Farmer, 511 U.S. at 839.

A serious medical need is one for which treatment has been recommended or for which the need is so apparent that even laymen would recognize that care is required. See Gobert v. Caldwell, 463 F.3d 339, 345 (5th Cir. 2006).

A prison official is deliberately indifferent to serious medical needs of prisoners if he intentionally denies or delays access to medical care. See Walker v. Butler, 967 F.2d 176, 178 (5th Cir. 1992); Thompkins v. Belt, 828 F.2d 298, 303 (5th Cir. 1987). A prison inmate can demonstrate an Eighth Amendment violation by showing that a prison official refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs. See Easter v. Powell, 467 F.3d 459, 463-464 (5th Cir. 2006) (citing Domino v. Tex. Dep't of Criminal Justice, 239 F.3d 752, 756 (5th Cir. 2001)).

Access to emergency medical care falls within the "minimal civilized measure of life's necessities." See Wilson v. Seiter, 501 U.S. 294, 298 (1991). When a gatekeeper to emergency care knowingly disregards a prisoner's complaints, he acts with deliberate indifference to that prison's medical needs. See Rodrigue v. Morehouse Det. Ctr., 2012 WL 4483438, at *6 (W.D. La. 2012), aff'd, 557 Fed.Appx. 341 (5th Cir. 2014) (prison officials were not entitled to qualified immunity where they ignored prisoner's requests for medical care for his obviously dire condition). In Rodrigue, the prisoner's only medical care provider was a licensed practical nurse who treated his repeated vomiting, that was caused by a ruptured appendix, with nausea medication and an enema. By the time Rodrigue was sent to the hospital, 10 days after the onset of his symptoms, sepsis had set in and he required three surgeries and an extended recovery period. The district court and the Fifth Circuit found

defendant had been deliberately indifferent to Rodrigue's obviously serious need to medical care and were not entitled to qualified immunity.

### 1.  Sheriff Hilton

Hauenstein alleges Defendants failed to provide him with access to a physician while he was in the RPDC, in violation of Louisiana and constituional law. Defendants concede in their brief (Doc. 36, pp. 5, 7-8/27) that RPDC inmates are treated by "coroner's office employees" and that Hauenstein was treated by "Barry" from the "coroner's office."   Defendants further concede there are no RPDC medical records or records kept by the coroner's employees showing the treatment provided to Hauenstein at DC-1 (Doc. 36-1, p. 7/27).

The Sheriff is the "keeper of the public jail of his parish." See La. R.S. 15:704; Howard v. Fortenberry, 723 F.2d 1206, 1210 n.9 (5th Cir. 1984), vacated in part on other grounds, 728 F.2d 712 (5th Cir. 1984).  When a sheriff is in charge of a parish jail, he is responsible for such matters as the training of personnel and the safety and medical care of inmates.  See Howard, 723 F.2d at 1210.  Under Louisiana law, the sheriff has the duty of operating the jail and seeing to it that the prisoners are properly cared for.  See Thompkins v. Belt, 828 F.2d 298, 304 n.8 (5th Cir. 1987) (citing O'Quinn v. Manuel, 773 F.2d 605, 609 (5th Cir. 1985)); see also Amiss v. Dumas, 411 So.2d 1137, 1141 (La. App. 1st Cir. 1982), writ den., 415 So.2d 940 (La. 1982).[3]

---

[3] La. R.S. 33:9001, et seq., empower the sheriff to raise revenues to finance his facilities and services through the creation of a continuing legal entity in each parish known as a law enforcement district, whose corporate existence survives the term of office of any individual sheriff.  See Prator v. Caddo Parish, 38,085 (La. App. 2 Cir. 1/28/04), 865 So.2d 932, 936; see also La. R.S. 13:5901.

The state has an obligation to provide medical care for those whom it is punishing by incarceration. Acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs of inmates constitute cruel and unusual punishment.  The Constitution does not command that inmates be given the kind of medical attention that judges would wish to have for themselves, nor the therapy that Medicare or Medicaid provide for the aged or the needy. It prohibits only deliberate indifference to serious medical needs.  See Ruiz v. Estelle, 679 F.2d 1115, 1149 (5th Cir. 1982).   The standard of care imposed by Louisiana law upon the confining authority is that medical services be adequate and reasonable. See Landry v. E. Baton Rouge Par. Sheriff's Office, 2014-0733 (La.App. 1st Cir. 3/9/15), writ granted, 2015-681 (La. 6/30/15), 168 So.3d 378 (citing Jacoby v. State, 434 So.2d 570, 573 (La.App. 1st Cir.), writ den., 441 So.2d 771 (La. 1983)).

Generally, although it is the sheriff and not the municipality that has the duty to provide day-to-day medical care for the prisoners, the municipality is responsible for the annual appointment of a licensed physician or a qualified health care provider to care for the prisoners whenever they are sick.  See Amiss, 411 So.2d at 1140 (citing La. R.S. 15:703).

Sheriffs in Louisiana are final policy makers with respect to management of the jail. The Sheriff's policy-making authority over management of the jail is not the result of a delegation from the Parish or any other local governmental entity.  The Sheriff's authority is derived from the state constitution. See Jones v. St. Tammany Par. Jail, 4 F.Supp.2d 606, 613 (E.D. La. 1998) (citing La. Const. art. 5 § 27); see also

Craig v. St. Martin Parish Sheriff, 861 F.Supp. 1290, 1300 (W.D. La. 1994) (citing La. Const. Art. 5, § 27); see also McNeese v. State of Louisiana, 2006 WL 1751055 (W.D. La. 2006).  The Sheriff also controls the inmates of the jail, the employees of the jail, and the daily operation of the jail.  See Jones, 4 F.Supp.2d at 613 (citing La. R.S. 33:1435; La. R.S. 15:704; O'Quinn, 773 F.2d at 609.

If there is a policy or custom that evinces deliberate indifference, deliberate indifference is treated as tantamount to intent, so that inaction by a policymaker deliberately indifferent to a substantial risk of harm is equivalent to the intentional action that setting policy presupposes. See Bd. of Cty. Comm'rs of Bryan Cty., Okl. v. Brown, 520 U.S. 397, 419 (1997).  In Burge v. Parish of St. Tammany, 187 F.3d 452, 471 (5th Cir. 1999), the Fifth Circuit explained that the official policy requirement may be met in at least three different ways: (1) when the appropriate officer or entity promulgates a generally applicable statement of policy and the subsequent act complained of is simply an implementation of that policy; (2) where no official policy was announced or promulgated but the action of the policymaker itself violated a constitutional right; and (3) even when the policymaker fails to act affirmatively at all, if the need to take some action to control the agents of the local governmental entity is so obvious, and the inadequacy of existing practice so likely to result in the violation of constitutional rights, that the policymaker can reasonably be said to have been deliberately indifferent to the need.

Failure to train may be a policy for purposes of 42 U.S.C. § 1983 only if such failure "reflects a 'deliberate' or 'conscious' choice by a municipality." See Kitchen v.

Dallas Cty., Tex., 759 F.3d 468, 484 (5th Cir. 2014) (citing City of Canton v. Harris,
489 U.S. 378, 389 (1989)).  Failure to properly train may also be a "policy" if "in light
of the duties assigned to specific officers or employees the need for more or different
training is so obvious, and the inadequacy so likely to result in the violation of
constitutional rights, that the policymakers of the city can reasonably be said to have
been deliberately indifferent to the need."  See Id. at 484 (citing City of Canton, 489
U.S. at 390).

In Landry, 168 So.3d at 379, Plaintiff Landry was in the custody of the East
Baton Rouge Sheriff for 18 days and, shortly after he was released, he died.  Although
the Sheriff transported Landry for his dialysis treatments, Landry was not given his
medications (for his kidneys, seizures, and blood clotting disorder) while he was in
jail.  Landry, 168 So.3d at 379, 382.   Although the trial and appellate courts held in
favor of the Sheriff and found negligence on the part of Prison Medical Services, the
prison medical services provider, the Supreme Court reversed the judgment as to the
Sheriff.

Justice Knoll stated in her concurrence that the Sheriff does not have the
authority to wholly abdicate his responsibility for the well-being of the inmates.  See
Landry, 168 So.3d at 381.  The relevant provisions of La. R.S. 15:703, which delegate
responsibility for inmates' medical care to "the governing authority" and "the prison
physician," do not by themselves allow plaintiff's claims to be defeated via summary
judgment.  See Landry, 168 So.3d at 382.  Justice Knoll further stated that:

> "[I]f members of the Sheriff's Office were told by Mr. Turner and his
> sister that Prison Medical Services had failed to provide *any*

prescription medicine, the Sheriff's Office should have timely ensured Prison Medical Services was aware of this asserted need....If any members of the Sheriff's Office knew or should have known of the content of this discussion or of similar responses to requests for prescription medicine, then the Sheriff's Office [sic] failure to take action when faced with Prison Medical Services' decision to ignore Mr. Turner's urgent request for medical care may well fall below the standard of reasonable care. Thus, genuine issues of material fact remain as to whether the defendant breached its duty to Mr. Turner."

See Landry, 168 So.3d at 382.

Here, Defendants contend the "coroner's employees" were "appointed" to provide healthcare to the inmates of the RPDC. First, the record does not indicate the qualifications of the "employees of the Coroner" or show they are qualified health care professionals as required by La. R.S. 15:703 and defined by La. R.S. 40:1231.1(10).

Second, as in Landry, Sheriff Hilton claims the coroner's employees were responsible for the inmates' medical care and that he has no authority over them. However, the Sheriff had an Eighth Amendment responsibility to provide for the well-being of the inmates in his care. If the coroner's employees were not responding to sick call requests, a circumstance the Sheriff's employees apparently knew about, Sheriff Hilton had a duty to ensure that Hauenstein was given medical care.

Defendants have not alleged or shown what policies and procedures are in place to ensure they meet their Eighth Amendment obligation to provide the inmates in their charge with adequate medical care. The RPDC's procedure was, apparently, to fill out a sick call request when medical attention was required. Defendants do not contend that Hauenstein did not follow the procedure for submitting sick call

requests. Obviously, that procedure does not work if a qualified health care provider does not respond to the request.

Moreover, the Inmate Handbook for the RPDC states that inmates will be sent to the Huey P. Long Hospital on weekends and for emergencies (Doc. 36-6, p. 8/46). That procedure does not appear to have been followed for Hauenstein.   Even if the procedures were correctly followed, the Sheriff's procedures for providing healthcare to inmates may be inadequate to meet his duty to provide for the reasonable medical care of RPDC inmates.  See Landry, 168 So.3d at 382.

The guards at the RPDC apparently told Hauenstein to have his parents call the warden and complain about the lack of medical care, but that procedure is also inadequate. The guards should have reported the problem to the Warden themselves. Their failure to do so indicates either a lack of procedures in place for handling serious medical problems or inadequate training for the guards, either of which implicate Sheriff Hilton in both his official and individual capacities.

Defendants argue that Hauenstein should have filed a grievance when he did not receive his requested medical care.   However, a grievance is not a normal procedure to obtain medical care.  It should not be necessary to use the grievance process to obtain medical care for a serious medical need, and grievance procedures are wholly inadequate when emergency medical care is required.   The Inmate Handbook does not set forth a specific grievance procedure for RPDC, so the Louisiana statutory provisions for inmate administrative remedies are applicable.[4]

---

[4] La. Adult Administrative Remedy Services–La. A.D.C. 22:I.325(G)(1):
    1.   First Step (Time Limit 40 days)

Those remedies give the Warden 40 days to respond to a first step grievance. Hauenstein could have died from the infection if he had to wait that long for a response.  Grievances are not the proper remedy for a lack of emergency medical care.

There are genuine issues of material fact regarding whether Sheriff Hilton breached his duty to Hauenstein.  See Landry, 168 So.3d at 382.    Therefore, Defendants' motion for summary judgment should be denied as to Sheriff Hilton.

### 2. Assistant Warden Ashley

Hauenstein alleges that Assistant Warden Ashley is also liable to him for the lack of medical care.

In this case, Hauenstein appears to allege Assistant Warden is liable to him in is supervisory capacity.  Hauenstein has not made any specific factual allegations that involve Assistant Warden Ashley.

The doctrine of respondeat superior, which makes an employer or supervisor liable for an employee's alleged tort, is unavailable in suits under 42 U.S.C. §1983. See Thompkins, 828 F.2d at 303.  Well settled §1983 jurisprudence establishes that supervisory officials cannot be held vicariously liable for their subordinates' actions.

---

a. The inmate commences the process by writing a letter to the warden, in which he briefly sets out the basis for his claim, and the relief sought (refer to Subsection F, "Procedure-Initiation of Process" for the requirements of the letter). The inmate should make a copy of his letter of complaint and retain it for his own records. The original letter will become a part of the process, and will not be returned to the inmate. The institution is not responsible for furnishing the inmate with copies of his letter of complaint. This letter should be written to the warden within 90 days of an alleged event. (This requirement may be waived when circumstances warrant. The warden, or his designee, will use reasonable judgment in such matters.) The requests shall be screened by the ARP screening officer and a notice will be sent to the inmate advising that his request is being processed or is being rejected. The warden may assign another staff person to conduct further fact-finding and/or information gathering prior to rendering his response. The warden shall respond to the inmate within 40 days from the date the request is received at the first step.

Supervisory officials may be held liable only if: (1) they affirmatively participate in acts that cause constitutional deprivation; or (2) implement unconstitutional policies that causally result in plaintiff's injury.  See Mouille v. City of Live Oak, Tex., 977 F.2d 924, 929 (5th Cir. 1992), cert. den., 508 U.S. 951 (1993); Thompkins, 828 F.2d at 303.

Hauenstein has not alleged any acts or omissions of Ashley or any unconstitutional policies implemented by Ashley that deprived Hauenstein of his constitutional rights.  According to Hauenstein's complaint and Ashley's affidavit (Doc. 36-5), Ashley was unaware of Hauenstein's medical problem until Hauenstein's mother called him.  Ashley responded to the phone call by checking on Hauenstein within an hour and immediately sending him to an emergency room.  Since there are no genuine issues of material fact that would preclude a summary judgment, defendants' motion for summary judgment should be granted in favor of Ashley and Hauenstein's action for damages against Ashley should be dismissed.

<u>Conclusion</u>

Based on the foregoing, IT IS RECOMMENDED that Defendant's' motion for summary judgment (Doc. 36) be DENIED AS TO SHERIFF HILTON.

IT IS FURTHER RECOMMENDED that Defendants' motion for summary judgment (Doc. 36) be GRANTED AS TO ASSISTANT WARDEN ASHLEY and that Hauenstein's action against Assistant Warden Ashley be DENIED AND DISMISSED WITH PREJUDICE.

17

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule 2(b), parties aggrieved by this recommendation have **fourteen (14)** days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14)** days after being served with a copy thereof.  No other briefs (such as supplemental objections, reply briefs etc.) may be filed.  Providing a courtesy copy of the objection to the magistrate judge is neither required nor encouraged.  Timely objections will be considered by the district judge before he makes a final ruling.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. See Douglass v. United Services Automobile Association, 79 F.3d 1415 (5th Cir. 1996).

THUS DONE AND SIGNED in chambers in Alexandria, Louisiana, this _15_ day of August 2016.

Joseph H.L. Perez-Montes
United States Magistrate Judge