RECEIVED
AUG 10 2018
TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA, LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

| KYLE SMITH HAUENSTEIN | CIVIL ACTION NO 1:14-3188 |
|---|---|
| VERSUS | |
| | JUDGE DEE D. DRELL |
| RAPIDES PARISH SHERIFF DEPT., ET AL. | MAG. JUDGE PEREZ-MONTES |

## RULING

Before the court is Sheriff William Earl Hilton's "Third Motion for Summary Judgment." (Doc. 113). The motion was filed following the issuance of the Fifth Circuit Court of Appeals' Judgment (Doc. 111) vacating our ruling (Doc. 98) and remanding the matter for dismissal of claims against Sheriff Hilton in his personal capacity. Accordingly, we shall now address Hauenstein's claim against Sheriff Hilton in his official capacity for denial of medical care.

Factual Background

Hauenstein was a pretrial detainee at Rapides Parish Detention Center – I (DC-I) in March 2014. On approximately March 2, 2014, Hauenstein stepped on a metal object while walking barefoot in the dorm. He sought medical care the following day and was treated by a Barry Harrington, a paramedic and member of the medical staff. Harrington attempted to remove the object from Hauenstein's foot and prescribed a seven day course of antibiotics. However, after completing the course of antibiotics but saw no improvement in his foot. In fact, the infection was much worse so Hauenstein submitted a sick-call request, as required by the "Rapides Parish Correctional Center's Policy and Procedure." Hauenstein did not receive a response so he continued submitting sick-call requests over the next several weeks. None of his requests garnered a response.

On April 11, 2014, Hauenstein's mother was able to reach Assistant Warden Pat Ashley to relay the denial of medical care endured by her son and his need for immediate medical attention. That same day, Hauenstein was transported to Huey P. Long Medical Center for treatment. Once there, the doctors determined the infection was acute and because Hauenstein had remnants of the metal object in his foot he needed to be transferred to St. Frances Cabrini Hospital for surgery.

Following surgery, Hauenstein's condition worsened as the large doses of antibiotics given to treat the infection began to adversely affect his kidneys. Hauenstein and his surgeon discussed the option of amputating the toe to save his kidneys. Hauenstein consented to the amputation and after a lengthy recovery period, his kidneys improved.

Law and Analysis

Hauenstein's only remaining claim against Sheriff Hilton is that he is liable in his official capacity for violating Hauenstein's right to reasonable and adequate medical care. "Official-capacity suits… 'generally represent only another way of pleading an action against an entity of which an officer is an agent.' As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." See Kentucky v. Graham, 473 U.S. 159, 165-66 (1985) (citations omitted). Liability attaches when the execution of a governmental entity's policy or custom results in a constitutional violation. Monell v. New York City Dept. of Social Services, 436 U.S. 658, 694 (1978). Establishing such a claims requires the plaintiff to identify an official policy that was adopted and promulgated by the policmaker or a pattern of similar constitutional violations that indicate the existence of an informal custom or practice. Valle v. City of Houston, 613 F.3d 536, 542 (5th Cir.2010) (citation omitted).

Hauenstein argues that Sheriff Hilton implemented a custom or practice of not overseeing medical staff and ensuring that the medical services provided were adequate and reasonable and complied with the policies that were in place. This allowed for absenteeism by paramedics and nurses thereby preventing them from receiving sick-call slips and creating lists of inmates to be seen. Had Sheriff Hilton not implemented his hands off approach, he would have known the medical staff was operating in derogation of implemented policies; Hauenstein would have received medical care in a timely and adequate manner; and he would not have had to choose between an amputation and kidney failure.

Sheriff Hilton argues that Hauenstein cannot establish a custom or policy implemented by Sheriff Hilton, and even if he could, the Fifth Circuit already found in its ruling on the appeal of this matter that "there is no evidence other prisoners suffered adverse health outcomes because of RPDC-I's healthcare system." Thus, "the Sheriff cannot be held liable on the theory that he implemented an unconstitutional policy when the record shows only a single instance in which the healthcare system at RPDC-I failed to provide adequate medical care."

While we agree with Hauenstein that the statement by the court was made regarding claims asserted against Sheriff Hilton in his personal capacity, we do not find that Hauenstein can establish "single instance" exception. That exception occurs only when the actor who committed the constitutional violation is a final policymaker. Valle, 613 F2d at 542. Though the administration of a parish jail, including medical care, is within the province of the Sheriff of that parish. La.Rev.Stat.Ann. §15:704. And, as the final policy maker, Sheriff Hilton has an obligation to ensure those incarcerated in his jail receive proper care, that is adequate and reasonable medical care, there simply is no competent summary judgment evidence suggesting Sheriff Hilton adopted a formal or informal custom or policy of maintaining a hands off approach when it came to his

3

medical staff and the care they rendered. Hauenstein twists the words of Michael Doiron to suggest such, but fails to show any proof in support. There is no evidence Sheriff Hilton made a decision, as a final policymaker, to adopt such a custom nor is there any evidence that the adoption of such a custom resulted in any causal connection between Hauenstein's injury and Sheriff Hilton. See City of Canton v. Harris, 489 U.S. 378, 385-89 (1989). Without more, Hauenstein simply cannot survive summary judgment.

Finally, Hauenstein's complains that Louisiana law was violated because the *Basic Standards of Condition* set forth in Louisiana Administrative Code Title 22, Part III, §2909 were not followed lacks merit. Specifically, he states there were no standing orders for medical staff to follow at the time of Hauenstein's injury and Hauenstein did not receive care from a physician within 48 hours of his requests.

As explained by the Fifth Circuit in its Judgment, Hauenstein's own deposition testimony shows the healthcare system at DC-I worked every other time he sought medical care and "[i]n each of those instances, he submitted a sick-call form and was evaluated and treated by one of the paramedics assigned to RPDC-I, usually within 24 hours." (Doc. 111, p.4). Additionally, the affidavits of Assistant Warden Ashley and Michael Doiron establish that during the time Hauenstein was detained at DC-I, policies were in place to ensure inmates received adequate medical care. Doiron who provided medical care, evaluations, and treatment from 1994 through 2015 stated that the medical doctor on staff, Dr. Francis Brian, was a licensed medical doctor who specialized in internal medicine. Dr. Brian provided doctor's orders which the medical staff would follow in providing treatment to Rapides Detention Center inmates. When an inmate presented with medical issues not covered by the doctor's orders, the staff simply contacted Dr. Brian for specific instruction.

Hauenstein fails to provide any evidence to the contrary. Instead he asserts conclusory statements that such was not the case. At most, he notes the absence of an affidavit from Barry Harrington stating what he knew and what he did; however, that is of no consequence as the question is the existence and adequacy of the policy implemented, not whether and how Barry Harrington followed the procedures.

In light of the foregoing, Sheriff Hilton's Third Motion for Summary Judgment shall be granted and the §1983 claims asserted against him shall be dismissed with prejudice. The court will issue a judgment in conformity with these findings.

**SIGNED** this 10th day of August, 2018 at Alexandria, Louisiana.

**JUDGE DEE D. DRELL**
**UNITED STATES DISTRICT COURT**